NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0430n.06

Case No. 23-5675

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
|  | ) | |
| ROBERT PRESTON, | ) | |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |

FILED
Oct 28, 2024
KELLY L. STEPHENS, Clerk

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

THAPAR, Circuit Judge. A jury convicted Robert Preston of producing child pornography, possessing child pornography, and cyberstalking. He now argues that the evidence wasn't sufficient to support the convictions and that the district court improperly enhanced his sentence. Because neither is true, we affirm.

I.

This case began when Robert Preston created an Instagram account called "Robertusmc." But that account wasn't for posting photos. Instead, he reached out to an eighth grader named I.B. A young teen at the time, I.B. believed what the account claimed: that someone was posting pictures of I.B. online, and that "Robertusmc" could help her figure out who it was. As far as I.B. was concerned, Robertusmc went by the name "Robert," and often used the email account robertusmc@live.com. Robert began to message I.B. and communicate with her on FaceTime.

While "Robert's" offer to help appeared kind, the account's messages with I.B. were not. He soon asked I.B. to take naked photos of herself, including of her genitals. I.B. initially complied. She took photos and videos of herself that showed her vagina. Pretty soon, though, I.B. cut off contact with "Robert." She blocked the address "robertusmc@live.com."

But that only made things worse. Preston started texting I.B. from random cell phone numbers. He also made an account called "iorelse," which went by the name "Brad," and started messaging I.B. on Snapchat. "Brad" demanded all sorts of inappropriate photos and videos of I.B., including videos of her masturbating. When I.B. didn't comply with these demands, "Brad" would repeatedly call her house late at night. Over messages, "Brad" would demand to know I.B.'s location and Snapchat passwords. To end the barrage, I.B. complied, at least for a while. She sent "Brad" the sexually explicit videos and photos that he desired.

"Brad" then blackmailed I.B. with these images. "Brad" threatened to post the explicit images on Instagram unless I.B. sent more. "Brad" told I.B. that he would create an Instagram account filled with I.B.'s photos and videos, make the account public, and then "follow" everyone from I.B.'s school—effectively ensuring that everyone saw the images. In other words, if I.B. didn't comply with Preston's sexual desires, Preston (posing as "Brad") would humiliate her. In Preston's own words, "I'm uploading pics now and starting to follow people[.] I told you locations on[,] you didn't listen[,] so this can end you stupid little bitch." R. 168-5, Pg. ID 1492.

I.B. begged for Preston to stop. She told Preston she was "cutting and crying and [was] so sad [she] want[ed] to die." R. 168-1, Pg. ID 1488. She said that Preston "made [her] so hurt." *Id*. Because of Preston's harassment, I.B. suffered trauma, began to self-harm, and went to see a therapist.

No. 23-5675, *United States v. Preston*

Preston posted the photos anyway. He followed I.B.'s classmates and even some of I.B.'s teachers so that they'd see the naked photos, too. When I.B. blocked the "iorelse" account, Preston fought back. He started to contact her through accounts with threatening names, such as "Answernoworelse[I.B.]" and "uploadingpicsifyoudon'tanswer." R. 163, Pg. ID 1286.

A federal investigation began into the robertusmc@live.com email account and "iorelse" Snapchat. All roads led back to Preston: the "iorelse" account's IP address was registered to 471 Lick Branch Road in Shelbiana, Kentucky—Preston's residence. The robertusmc@live.com address was registered to the same address and returned a Facebook account registered to Preston. Upon arresting Preston, officers found that he possessed a Motorola phone containing child pornography. The phone's web history also had more than twenty hits for I.B.'s name. These included searches on encrypted websites that had videos with I.B.'s name in the title. Preston also owned a Husky—the same type of dog that "Robert" told I.B. he had.[1] And I.B. hasn't received any harassing phone calls, messages, or communications like those she got from "Robert," "Brad," or any other threatening account, since Preston's arrest.

After Preston's arrest, a federal grand jury indicted him on three counts. The first was that he produced child pornography in violation of 18 U.S.C. § 2251(a). The second was that he possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The third was that he cyberstalked I.B. in violation of 18 U.S.C. § 2261A(2)(B). A jury convicted Preston on all counts. For the second count, the jury also found that the images he possessed included minors younger than twelve. The court sentenced Preston to 552 months in prison, followed by ten years of supervised release. Preston appealed.

---

[1] At trial, I.B. testified that "Robert" told her he had a Husky or German Shepard.

No. 23-5675, *United States v. Preston*

II.

On appeal, Preston makes three arguments. First, he claims that there wasn't enough evidence to convict him. Second, Preston argues that the district court shouldn't have enhanced his sentence for producing sadistic videos. Third, and finally, Preston asserts that the district court erred when it enhanced his sentence for coercing a minor to take photos and videos of sexual content.

A.

Here, a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have found that the evidence proved Preston's guilt. *United States v. Burris*, 999 F.3d 973, 976 (6th Cir. 2021). Start with the charges that Preston produced child pornography and stalked I.B. There's abundant evidence suggesting that he did. For one, the robertusmc@live.com address has obvious connections to Preston: His name is Robert, and he was a United States Marine Corps ("USMC") recruit. And that account told I.B. that he had a husky or other large dog. Preston owned such a dog.

Even more compelling than these similarities, Preston's digital fingerprints are everywhere. The IP address associated with both the robertusmc@live.com email and the "iorelse" Snapchat account was assigned to Preston's home. Microsoft gave investigators records showing that the robertusmc@live.com email account was registered to a "Robert Preston" who lived at Preston's address. And Preston's mom said he lived there when I.B. received the messages.

The robertusmc@live.com email was also linked to a Facebook account for "Robert Preston," which included a photo the jury saw and could compare to Preston. His cell phone's browsing history contained twenty-two searches for I.B. And he possessed files with the victim's

- 4 -

No. 23-5675, *United States v. Preston*

name. The phone was also associated with two accounts: It had emails sent to robertusmc2017@live.com and was logged into a data storage site account called "Bad Daddy." The email is almost identical to the account Preston used to abuse I.B. And the data storage account on Preston's phone resembled the name robertusmc@live.com used on the same site, "Baddy Daddy."

Because there were significant digital ties to Preston, a rational trier of fact could conclude Preston was guilty of both counts he challenged. For the child pornography charge, a rational fact-finder could find that Preston intended to "sexually exploit a minor for the purpose of producing a visual depiction of this exploitation." *United States v. Sykes*, 65 F.4th 867, 881 (6th Cir. 2023). And for the stalking charge, a rational trier of fact could conclude that Preston intended to "harass [or] intimidate" I.B. and used electronic communication systems to do so. 18 U.S.C. § 2261A(2).

Preston responds to this evidence with two arguments. Neither is compelling. First, he argues that no evidence directly linked him to the crimes at issue. But circumstantial evidence alone can support a conviction. *See, e.g., Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000); *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014). And, as described above, a mountain of circumstantial evidence connects him to the crimes.

Next, Preston claims that his uncle, who lived close to Preston at the time, could've used Wi-Fi at Preston's residence to abuse I.B. But Preston's uncle said he never used the Wi-Fi at Preston's house and didn't have the password for it. He also denied communicating with I.B. The jury heard from Preston's uncle and had a chance to assess his credibility. Jurors also heard from Preston's mother, who said that only she and Preston had access to the Wi-Fi in question. Preston thus asks this court to re-weigh the credibility of the witnesses. We won't do that. *See Brown v.*

No. 23-5675, *United States v. Preston*

*Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Instead, our job is to ensure that the jury made a rational decision. It did. And we have no reason to displace its decision.

Preston makes similar arguments about his conviction for possessing child pornography. In brief, he asserts that the jury couldn't reasonably conclude that he "knowingly possessed" visual depictions of a minor engaging in sexually explicit conduct. But a rational trier of fact assessing the evidence could have found that Preston "knowingly possessed" visual depictions whose production "involve[d] the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(4)(B)(i).

Preston's cell phone provided plenty of evidence. Preston doesn't contest that the cell phone in question came from his front pocket. And what was on that phone? Sexual photos and videos of minors. Thus, Preston's phone indisputably contained child pornography. What's more, the phone was logged into an account called "Bad Daddy," which also had child pornography. All told, this digital evidence directly tied Preston, via his cell phone, to child pornography.

And that evidence sufficed. Where a defendant possesses child pornography in a personal computer or in his files, the "jury may infer that the individual knowingly possessed the images." *United States v. Oufnac*, 449 F. App'x 472, 476 (6th Cir. 2011). Here, it's undisputed that the images in question were on Preston's cellphone. Thus, the jury could have inferred that Preston knew he had the images, and that determination was not an error of law.

Preston responds by arguing that someone else could have "synced" their child pornography to his phone. Appellant Br. at 12. In other words, someone else could have remotely downloaded all these troubling files to his cell phone. Who is this someone else? Preston again points the finger at his uncle. On this theory, his uncle could have somehow known about a specific cloud storage site, accessed an account with child pornography, and then synced it to Preston's

No. 23-5675, *United States v. Preston*

phone—all without Preston (or anyone else) knowing. But the jury heard the evidence for this hypothesis and rejected it, and it is not our job to "substitute our judgment for that of the jury." *Rogers*, 769 F.3d at 377.

The overwhelming evidence supports Preston's conviction. Thus, his sufficiency challenge fails.

B.

Next, Preston argues that the district court incorrectly applied a four-level sentence enhancement for making child pornography depicting sadistic or masochistic conduct. Preston argues that asking a minor to insert objects into her private parts doesn't amount to sadistic or masochistic conduct. But it does. So, this challenge also fails.

To apply the enhancement, a sentencing court must determine that an image (1) depicts sexual activity by a minor and (2) portrays conduct that would cause an objective viewer to believe "that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor." *United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012). In some cases, like when an image depicts the penetration of a prepubescent child, our precedent says that the image is inherently sadistic. *See id.*; *United States v. Cover*, 800 F.3d 275, 280 (6th Cir. 2015) (per curiam). In other cases, we look to whether the image depicts violence or the infliction of mental or physical pain. *Cover*, 800 F.3d at 280; *see also Corp*, 668 F.3d at 390. Thus, circuit precedent aligns with the enhancement's plain meaning: What matters is whether the image in question shows physical or emotional pain, punishment, or humiliation.

This case requires examining whether photos of a middle- and high-school aged girl inserting objects into her private parts are sadistic. They are. Common sense tells us as much.

No. 23-5675, *United States v. Preston*

To ask the question whether inserting foreign objects into a young girl's private parts is painful and humiliating is to answer it.

Our court's precedent aligns with that commonsense intuition. This court has held that pictures of penetration "that is likely to have been painful" qualify for § 2G2.1(b)(4)'s four-level enhancement. *United States v. Groenendal*, 557 F.3d 419, 426 (6th Cir. 2009). In *Groenendal*, the court concluded that an adult male's penetration of an underage female was sadistic because it would likely hurt the minor. *Id.* Other courts have held similarly, reasoning that the four-level enhancement for "sadistic or masochistic conduct" is "warranted when the sexual act depicted is 'likely to cause pain in one so young.'" *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000) (citation omitted). While such cases often involve penetration of prepubescent females, the logic is that at the time of the offense, the disparity between an adult's size and a child's body is such that an adult male's penetration of a child necessarily causes pain. *Groenendal*, 557 F.3d at 426.

The same calculus applies here. Thirteen-year-olds haven't completed puberty. Penetration of private parts with a hairbrush and pencil raises similar concerns to penetration by male anatomy. It raises the familiar concern that is consistent across caselaw: that penetration of minors' bodies causes pain. Thus, images of such conduct are sadistic. Moreover, the photos in question are also humiliating. It is humiliating for a child to insert a hairbrush into her private parts. Therefore, images of that conduct are sadistic.[2]

---

[2] There is broad agreement among the circuits that child pornography depicting penetration of a child with foreign objects is sadistic. *See United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996); *United States v. Canada*, 110 F.3d 260, 264 (5th Cir. 1997) (per curiam); *United States v. Comeaux*, 445 F. App'x 743, 746 (5th Cir. 2011); *United States v. McGavitt*, 28 F.4th 571, 576 (5th Cir. 2022); *United States v. Johnson*, 784 F.3d 1070, 1075 (7th Cir. 2015); *United States v. Vivirito*, 65 F.4th 341, 342 (7th Cir. 2023) *reh'g denied*, No. 22-2167, 2023 WL 3688103 (7th Cir. May 26, 2023); *United States v. Starr*, 533 F.3d 985, 1001 (8th Cir. 2008); *United States v. Pappas*, 715 F.3d 225, 228 (8th Cir. 2013); *United States v. Vogelpohl*, 827 F. App'x 621, 622 (8th Cir. 2020) (per curiam); *United States v.*

No. 23-5675, *United States v. Preston*

In response, Preston asserts that the images weren't sadistic or masochistic because they didn't rise "rise to the level of humiliation and degradation contemplated by . . . the guideline provision." Appellant Br. at 13. Thus, Preston asserts that the "discomfort," humiliation, and degradation that he caused I.B. were minimal—and thus not enough to warrant the four-level enhancement. *Id.*

That argument doesn't hold up. For one, the Guidelines don't say anything about the "level of humiliation and degradation" that a child must suffer. In addition, we assess depictions of pain and humiliation under an objective standard. What matters is not whether I.B. herself was experiencing pain—although she almost assuredly was. Rather, a court examines whether an observer would determine the images depict the infliction of pain or humiliation on a minor. *Corp*, 668 F.3d at 389. And as explained above, inserting foreign objects into a child's body is objectively painful and humiliating.

Even the caselaw that Preston cites supports this view. In *United States v. Comeaux*, the Fifth Circuit explained that videotapes of an adult male forcing his stepdaughter to penetrate herself with her fingers and use a vibrator, among other conduct, merited an enhancement under § 2G2.1(b)(4). 445 F. App'x 743, 744 (5th Cir. 2011) (per curiam). That conduct—and result— is not distinguishable from the facts here.

Forcing a minor to insert everyday objects into her private parts is painful and embarrassing. Thus, Preston's decision to produce photographs of such acts merited a four-level increase under § 2G2.1(b)(4). The district court did not err.

---

*Schnekenburger*, 788 F. App'x 1044, 1044–45 (8th Cir. 2020) (per curiam); *United States v. Sanchez*, 30 F.4th 1063, 1067 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 227 (2022).

No. 23-5675, *United States v. Preston*

C.

Finally, Preston contends that the district court's application of a two-level enhancement for using a minor constituted unreasonable double counting because his original crime—producing child pornography—already involved a minor. [*Id.*] And double counting would present an issue because it "renders a sentence procedurally unreasonable." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (quoting *United States v. Flack*, 392 F. App'x 467, 470 (6th Cir. 2010)). But this argument also fails.

"[D]ouble counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008) (citation and internal quotation marks omitted). However, double counting doesn't apply "where a defendant is penalized for 'distinct aspects of the defendant's conduct.'" *Id.* (quoting *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007)). In other words, if a court applies an enhancement to capture the same conduct as an offense, that's double counting. But if the enhancement deals with conduct not captured elsewhere, there is no double counting.

Under the Guidelines, courts apply a two-level sentence enhancement if the "defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of . . . the offense." U.S.S.G. § 3B1.4. The Guidelines also contain several comments. The first explains that the "used or attempted to use" language includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting" minors. *Id.* at cmt. 1. Another comment explains that the increase doesn't apply if a defendant's offense already "incorporates this factor." *Id.* at cmt. 2.

Preston argues that this second comment means the district court's application of the enhancement was double counting. As he sees it, because his underlying offense—production of

- 10 -

No. 23-5675, *United States v. Preston*

child pornography—involved a minor, the court shouldn't have also applied a sentencing enhancement for use of a minor in the commission of the offense. But Preston had a child both appear in *and* make the videos and images. Preston's conviction only accounted for producing explicit material involving a minor. It didn't account for having a minor take photos and videos of herself. *See United States v. Hall*, 733 F. App'x 808, 810 (6th Cir. 2018) (explaining that the sentencing enhancement "applies to a scenario, as we have here, in which a minor photographs herself"). The two-level sentencing enhancement covers this second element. *See id.* The law requires that he be held accountable for both acts. *See United States v. Martin*, 291 F. App'x 765, 768 (6th Cir. 2008). Because Preston asked a child to film herself performing sexual acts, he did "use" a child to make the images at issue. Therefore, the two-level sentence enhancement in § 3B1.4 applies.

\* \* \*

In sum, Preston's claims fail. Because there was sufficient evidence to support his convictions, and the district court correctly applied two sentence enhancements, the judgment of the district court is affirmed.